Case 1:16-cv-00226-GZS   Document 1   Filed 04/29/16   Page 1 of 16   PageID #: 1

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **Stanley Fogg**, ) | |
| **Helen Fogg**, ) | |
|   ) | |
| Plaintiffs, ) | |
|   ) | |
| v.  ) | Docket No. |
|   ) | |
| **Ocwen Loan Servicing, LLC,** ) | |
|   ) | |
| **Select Portfolio Servicing, Inc**., ) | |
|   ) | |
| **Bank Of New York Mellon as Trustee** ) | |
| **for Asset-Backed Certificates, Series 2006-1,** ) | |
|   ) | |
| Defendants ) | |
|   ) | |

## COMPLAINT

### Introduction

This is an action for actual, compensatory, statutory, and punitive damages brought by Stanley Fogg and Helen Fogg, individual consumers, against Ocwen Loan Servicing LLC ("Ocwen"); Select Portfolio Servicing, Inc. ("SPS") for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.*, the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§11001 *et seq.* (collectively, the "FDCPA"), and against SPS and Bank of New York Mellon as Trustee For Asset-Backed Certificates, Series 2006-1 for violations of the Maine Consumer Credit Code, 9-A M.R.S. §9-403(G), all of which prohibit misleading and unfair conduct toward consumers.

### I.   Jurisdiction and Venue

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Venue is proper here pursuant to 28 U.S.C. § 1391, as Plaintiffs are residents of Cumberland County, Maine, all relevant events giving rise to Plaintiffs' claims occurred in this District, and Defendant was doing business in Maine during all relevant times.

## II.     Parties

3. Plaintiff Stanley Fogg is a natural person residing in Gray, Maine.

4. Plaintiff Helen Fogg is a natural person residing in Gray, Maine.

5. Stanley and Helen Fogg are husband and wife and will collectively be referred to as "the Foggs."

6. Defendant, Ocwen Loan Servicing LLC ("Ocwen") is a limited liability corporation organized under the laws of Delaware, with a principal place of business in Florida.

7. Ocwen was the servicer of the Foggs' mortgage loan on property located at 2325 Route 2, Hermon, ME 04401 beginning in approximately 2011 until on or around August 17, 2015.

8. Ocwen acquired servicing of the Fogg's mortgage loan while the loan was in default.

9. Ocwen engages in the business of collecting debts in this state.

10. Ocwen regularly engages in the enforcement of security interests securing debts.

11. Ocwen engages in the collection of debts using the mails and telephone, and Ocwen regularly attempts to collect debts alleged to be due another.

12. Defendant Ocwen is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §11002(6) and 11003(7)(C).

13. Defendant Select Portfolio Servicing, Inc. ("SPS") is a business corporation organized under the laws of Utah.

14. On or around August 17, 2015, SPS' servicing of the subject loan on property located at 2325 Route 2, Herman, ME 04401 was transferred from Ocwen to SPS.

15. Defendant SPS acquired servicing of the subject loan when it was in default.

16. Defendant SPS engages in the business of collecting debts in this state.

17. Defendant SPS regularly engages in the enforcement of security interests securing debts.

18. Defendant SPS engages in the collection of debts using the mails and/or the telephone, and Defendant SPS regularly attempts to collect debts alleged to be due another.

19. Defendant SPS is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §§ 11002(6) and 11003(7)(C).

20. Upon information and belief, Bank of New York Mellon is a banking association organized and existing under the laws of the United States of America with a principal place of business in New York. Bank of New York Mellon at all relevant times served as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-1.

21. The Bank of New York Mellon as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-1 was the Plaintiff in the foreclosure action, *The Bank of New York Mellon F/K/A the Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-01 v. Stanley Fogg and Helen Fogg*, (State of Me. D. Ct., Bangor No. RE-2011-15).

### III.   Facts

22. On or about October 26, 1998, Stanley Fogg and Helen Fogg executed and delivered to Countrywide Home Loans, Inc. a certain promissory note (the "Note") in the original principal amount of $145,700.00.

23. To secure the Note, on October 26, 1998, the Foggs executed and delivered to Countrywide Home Loans, Inc. a mortgage (the "Mortgage") of certain real property located in Hermon, Penobscot County, Maine, which Mortgage was recorded in the Penobscot County Registry of Deeds in Book 6861 at Page 358.

24. The Note and Mortgage are hereinafter collectively referred to as the "loan" or "mortgage loan."

25. Upon information and belief, the mortgage loan became part of a trust named CWABS, Inc. Asset-Backed Certificates, Series 2006-01 for which The Bank of New York Mellon f/k/a The Bank of New York is the Trustee for the Certificate holders.

26. In 2006, the Foggs fell behind on their mortgage after Mrs. Fogg suffered a heart attack and then was laid off from her job. This decrease in income along with increased expenses left the Foggs unable to make their December 2007 mortgage payment.

27. Then, in February 2008, Mr. Fogg suffered life-threatening gangrene and a flesh eating bacteria that left him hospitalized for almost two months.

28. Around this time, Mrs. Fogg tried to work with the servicer of their loan at the time, Countrywide Home Loans, to get a modification of the loan but was provided conflicting information about the amount ($1,200.00 then $1,800.00) they needed to send in to qualify for a modification.

29. In mid-2008, the servicing of the loan transferred to Litton Loan Servicing ("Litton").

30. On February 3, 2011, The Bank of New York Mellon as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-1 filed an action to foreclose on the Fogg's former property at 2325 Route 2, Hermon, ME 04401 captioned *The Bank of New York Mellon F/K/A the Bank of New York as Trustee for the*

*Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-01 v. Stanley Fogg and Helen Fogg*, (State of Me. D. Ct., Bangor  No. RE-2011-15).

31. Attempts by and through the Foggs and their counsel to retain the home were unsuccessful and the Foggs agreed to enter into a Consented Judgment of Foreclosure and Sale which was ordered by the Court on August 6, 2013 ("Order"), a true copy of which is attached as Exhibit 1 and incorporated by reference herein.

32. Per the Order, judgment was entered for the Plaintiff and the Plaintiff was granted exclusive possession of the real estate upon expiration of the redemption period if the Defendants did not pay the amount due.  The Foggs agreed to waive the redemption period.   The judgment stated that the amounts owed would be paid through distribution of the sale proceeds and that "no execution shall issue against either Defendant for any deficiency balance." *See* Exhibit 1.

33. The Foggs did not pay the amount alleged owed and, with the redemption period waived, the Defendants' ownership of the property was extinguished; there was no appeal and they had vacated the property.  With the deficiency waived, they were no longer personally liable for amounts alleged owed on the loan.

34. Despite the judgment releasing the Foggs of their personal financial obligation on the loan and interest in the property, the loan servicer at the time, Ocwen, as alleged by the Foggs in the matter of *Stanley Fogg and Helen Fogg v. Ocwen Loan Servicing, LLC, Bank of New York Mellon as Trustee for Asset-Backed Certificates, Series 2006-1,* et al. US. District Court, Maine Civ. No. 2:14-cv-454, delivered at least 10 notices over a one-year period attempting to collect on monies alleged owed under the loan.

35. The parties entered into a Confidential Settlement and Release Agreement in June 2015 and the matter was dismissed.

36. By letter dated July 24, 2015, Ocwen wrote to inform the Foggs that the servicing of the loan would be transferred to SPS. The letter continued to solicit the Foggs to make mortgage loan payments, to Ocwen until August 17, 2015 and then to SPS after August 17, 2015.  A true and accurate copy of this letter is attached as Exhibit 2 and incorporated by reference herein.

37. The letter indicated that the effective servicing date of SPS would be on or around August 16, 2015.  At that time or shortly thereafter, SPS had or should have had notice of the Judgment and matters that had transpired regarding this loan.

38. Despite notice of the waiver of deficiency through the consented-to judgement, notice of the previous FDCPA action filed against Ocwen, and the settlement agreement as a result of the action, Ocwen and SPS have continued to deliver the same types of debt collection notices to the Foggs, perpetuating their worry, frustration, and anxiety.

39. On or around August 16, 2015, Ocwen sent to the Foggs directly a letter confirming the cancellation for lender placed insurance which was effective as of August 17, 2015. A copy of this letter is attached as Exhibit 3 and incorporated by reference herein.

40. On or around August 17, 2015, Ocwen sent to the Foggs directly a letter titled "Final Escrow Account Disclosure Statement." The statement showed an "ending balance" of $-17,437.52. A copy of this statement is attached as Exhibit 4 and incorporated by reference herein.

41. On or around August 21, 2015, SPS delivered to the Foggs directly a letter requesting proof of hazard insurance, and stated "because hazard insurance is required on your

property, we plan to buy insurance for you." The letter continued to demand payment: "You must pay us for any period during which the insurance we buy is in effect but you do not have insurance." A copy of this letter is attached hereto as Exhibit 5 and incorporated by reference herein.

42. On or around August 26, 2015, SPS sent directly to the Foggs a letter alleging that the account was in default and attempted to solicit the Foggs to contact SPS to discuss their loss mitigation options. A copy of this letter is attached hereto as Exhibit 6 and incorporated by reference herein.

43. On around August 26, 2015, SPS sent directly to the Foggs a letter titled "Validation of Debt Notice." The letter stated "As of August 26, 2015, our records show that the amount of debt you owe is $260,895.31." A copy of this letter is attached hereto as Exhibit 7 and incorporated by reference herein.

44. On or around August 26, 2015, SPS delivered to the Foggs directly a mortgage statement that indicated: "As of August 26, you are 2,763 days delinquent on your mortgage loan" and "Total Amount Due $128,871.47." A copy of this statement is attached hereto as Exhibit 8 and incorporated by reference herein.

45. On or around August 28, 2015, SPS delivered directly to the Foggs a letter to solicit contact from the Foggs to update their personal contact information. A copy of this letter is attached hereto as Exhibit 9 and incorporated by reference herein.

46. On or around September 15, 2015, SPS delivered to the Foggs directly a mortgage statement that indicated: "As of September 15, you are 2,783 days delinquent on your mortgage loan" and "Total Amount Due $129,828.15." A copy of this statement is attached hereto as Exhibit 10 and incorporated by reference herein.

47. On or around September 17, 2015, SPS delivered directly to the Foggs a letter soliciting contact by the Foggs to discuss loss mitigation options available to them in order to stay in the home. A copy of this letter is attached hereto as Exhibit 11 and incorporated by reference herein.

48. On or around September 25, 2015, SPS delivered directly to the Foggs a letter indicating it was their second and final notice to provide proof of insurance on the property, and because of this, SPS planned to buy insurance on their behalf. The letter continues to state "You must pay us for any period during which the insurance we buy is in effect but you do not have insurance" and "The insurance we buy will cost $1,156.00 annually, which may be more expensive than insurance you can buy yourself." A copy of this letter is attached hereto as Exhibit 12 and incorporated by reference herein.

49. On or around October 15, 2015, delivered to the Foggs directly a mortgage statement that indicated: "As of October 15, you are 2,813 days delinquent on your mortgage loan" and "Total Amount Due $131,092.83." A copy of this statement is attached hereto as Exhibit 13 and incorporated by reference herein.

50. On or around October 26, 2015, SPS sent directly to the Foggs a letter titled "Notice of Placement of Insurance." The letter included a policy that had been purchased by SPS. The letter indicated that the insurance SPS purchased is more expensive and has less coverage than a policy the Foggs could obtain on their own and included a premium rate of $1,156.00 as a total amount due. A copy of this letter is attached hereto as Exhibit 14 and incorporated by reference herein.

51. On or around October 30, 2015, SPS sent directly to the Foggs a letter with loss mitigation options available to them and solicited contact so they may be further

evaluated for options to pay the loan and avoid losing the home to foreclosure. A copy of this letter is attached hereto as Exhibit 15 and incorporated by reference herein.

52. By letter dated January 13, 2016, sent by SPS directly to the Foggs, SPS continued to solicit the Foggs to consider foreclosure avoidance options that may be available to them such as a short sale or deed-in-lieu of foreclosure that would "satisfy[] the outstanding balance on your account." A copy of this letter is attached hereto as Exhibit 16 and incorporated by reference herein.

53. On February 5, 2016, Plaintiffs' counsel sent a letter to Defendant SPS's general counsel, with a copy to general counsel for The Bank of New York Mellon regarding Defendant SPS's pattern and practice of misconduct toward Plaintiffs, attaching copies of Defendant SPS's letters and statements, and explaining that, having entered into settlement with Plaintiffs on Plaintiffs' earlier claims and entry of the consent foreclosure judgement in conjunction with the expiration of the redemption period and waiver of deficiency as set forth in the judgement, Plaintiffs were left with zero interest in the Property and therefore Defendant SPS had no reason to be contacting Plaintiffs.

54. General Counsel for SPS received this letter on February 11, 2016.

55. As of the date of this complaint, counsel for SPS has not responded to the Foggs' February 5, 2016 demand letter.

56. By letter dated February 17, 2016, sent by SPS to the Foggs' attorney, SPS alleged that the Foggs were in default of their loan on the property and continued by offering repayment options and other possible foreclosure diversion solutions. A copy of this letter is attached hereto as Exhibit 17 and incorporated by reference herein.

57. Defendant SPS' unending direct written communications to Plaintiffs regarding loss mitigation options to retain the previously surrendered property and the purchase of hazard insurance for the property have caused Plaintiffs, without limitation, increased emotional distress, anxiety, pain, and frustration.

58. The Foggs are an elderly couple on a fixed income. Stanley is a disabled military veteran and Helen is his primary caretaker.

59. The Foggs fear the collection attempts will continue until they pay what Defendants Ocwen then SPS alleged is owed for, including but not limited to, an outstanding escrow and principal balance and force-placed insurance policies. The amounts alleged owed are prohibitive given their fixed income.

60. As a result of SPS's continued unfair debt collection conduct, Helen and Stanley again began to feel hopeless and defeated. They believed the loan had been resolved with the Judgment and then the Settlement. However, to receive the notices again made them wonder if they really did owe the money. They also could not imagine how Ocwen could transfer the loan to someone else after the Judgement entered and how SPS could continue to ask for money from them.

61. After the Settlement, after renting for years, the Foggs began to look to buy a new home with a Veteran's Administration loan through Stanley's service in the military. They found a perfect home near their grandchildren that is one-level to accommodate Stanley's disabilities. They worried until the day of the closing that the amounts alleged owed would somehow prevent them from buying the home. They had to request and provide explanations regarding the status of the subject property and loan to the mortgage broker. Throughout the process, they were nervous, anxious, and upset they would not be able to

purchase the home because of Bank of New York Mellon, Ocwen, and SPS' inaccurate accounting and management of the loan.

62. Defendants Ocwen then SPS's direct written communications to Plaintiffs regarding the Property, including requests to Plaintiffs for payment and notifications that Defendant SPS would be charging Plaintiffs for insurance on the Property in which Plaintiffs no longer had any interest, is evidence that Defendant Ocwen and SPS have inadequate policies and procedures in place for servicing loans that are subject to a consented-to judgment of foreclosure and waiver of deficiency.

63. Upon information and belief, Ocwen and SPS have insufficient policies and procedures in place for processing loans where the loan balance has been waived or discharged and no personal liability remains on the debt.

64. The Defendants have engaged in a pattern and practice of seeking to collect on loan balances that were waived or discharged and not owed personally by the debtor, in this matter and other matters in and outside of Maine.

65. Upon information and belief, based on allegations in other matters, Defendants have engaged in such pattern and practice conduct with debtors and consumers nationwide, not just in this instant action. *See, e.g. allegations in: Georgia Guertin v. Ocwen et al*. Civil No. 2:16-cv-00186-JDL (U.S. D. Ct. Me. March 31, 2016); *Ackley v. Ocwen Loan Servicing et* al, Civil No. 2:16-cv-00015-JDL (U.S. D. Ct. Me. January 12, 2016); *Carson v. Ocwen Loan Servicing et al*, Civil No. 2:15-cv-00514-DBH (U.S. D. Ct. Me. December 17, 2015); *Ackley v. Ocwen Loan Servicing et* al, Civil No. 2:15-cv-00042-JDL(U.S. D. Ct. Me. January 29, 2015); In *re Alley*, 09-21500, 2014 WL 2987656, at *1 (Bankr. D. Me. July 1, 2014); *Pappavasiliou v. Ocwen et. al*, Civil No. BCD-cv13-04

(Maine Business and Consumer Court 2013); *Dalphonse v. Ocwen*, U.S. Bankruptcy Court, District of Maine, Adversary Proceeding No. 14-2001; *McCormick v. Ocwen*, U.S. Bankruptcy Court, District of Maine, Adversary Proceeding No. 13-02015; *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 577-78 (W.D. Va. 2013); *Oliver v. Ocwen Loan Services, LLC*, C12-5374 BHS, 2013 WL 210619, at *4-5 (W.D. Wash. Jan. 18, 2013); *Saccameno v. Ocwen Loan Servicing, LLC*, 15 C 1164, 2015 WL 7293530, at *1-2 (N.D. Ill. Nov. 19, 2015); *Barton v. Ocwen Loan Servicing LLC*, CIV. 12-162 MJD, 2013 WL 5781324, at *6 (D. Minn. Oct. 25, 2013); *Donnelly-Tovar v. Select Portfolio Servicing, Inc.*, 945 F.Supp.2d 1037 (D. Nebraska 2013) (class action).

## COUNTS ONE AND TWO
(Ocwen and SPS)

**Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and Violation of the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001 *et seq.* (collectively, the "FDCPA")**

66. Plaintiffs re-allege and incorporates the paragraphs above as if fully set out herein.

67. Through the conduct outlined above, defendant Ocwen violated the FDCPA by, including but not limited to: (1) falsely representing the character, amount, and legal status of the mortgage loan debt through direct written communications to Plaintiffs, as detailed above (15 U.S.C. § 1692e(2)(A), 32 M.R.S.A. § 11013(2)(B)(1)); (2) the use of false representations and deceptive means to collect or attempt to collect on the mortgage loan debt (15 U.S.C. § 1692e(10), 32 M.R.S.A. § 11013(2)); (3) engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiffs in connection with collection of the mortgage loan debt by delivering direct written communications to Plaintiffs seeking payment not owed following Plaintiffs' consented-to judgement of

foreclosure and demanding Plaintiffs obtain and/or pay for hazard insurance for the Property that was the subject of the mortgage loan debt and in which Plaintiffs no longer had any interest  (15 U.S.C. § 1692d, 32 M.R.S.A. § 11013(1)); (4) communicating directly with Plaintiffs when Defendant knew that Plaintiffs were represented by an attorney with respect to the mortgage loan debt, and Defendant had knowledge of the attorney's name and address (15 U.S.C. § 1692c(a)(2), 32 M.R.S.A. § 11012(1)(B)); and (5) using unfair or unconscionable means to collect or attempt to collect on the mortgage loan debt (11 U.S.C. § 1692f, 32 M.R.S.A. § 11013(3)).

68. Through the conduct outlined above, defendant SPS violated the FDCPA by, including but not limited to: (1) falsely representing the character, amount, and legal status of the mortgage loan debt through direct written communications to Plaintiffs, as detailed above (15 U.S.C. § 1692e(2)(A), 32 M.R.S.A. § 11013(2)(B)(1)); (2) the use of false representations and deceptive means to collect or attempt to collect on the mortgage loan debt (15 U.S.C. § 1692e(10), 32 M.R.S.A. § 11013(2)); (3) engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiffs in connection with collection of the mortgage loan debt by delivering direct written communications to Plaintiffs seeking payment not owed following Plaintiffs' consented-to judgement of foreclosure and demanding Plaintiffs obtain and/or pay for hazard insurance for the Property that was the subject of the mortgage loan debt and in which Plaintiffs no longer had any interest  (15 U.S.C. § 1692d, 32 M.R.S.A. § 11013(1)); (4) communicating directly with Plaintiffs when Defendant knew that Plaintiffs were represented by an attorney with respect to the mortgage loan debt, and Defendant had knowledge of the attorney's name and address (15 U.S.C. § 1692c(a)(2), 32 M.R.S.A. § 11012(1)(B)); and

(5) using unfair or unconscionable means to collect or attempt to collect on the mortgage loan debt (11 U.S.C. § 1692f, 32 M.R.S.A. § 11013(3)).

69. Defendants Ocwen and SPS's direct written communications to Plaintiffs regarding the mortgage loan debt that had been extinguished through the terms set forth in the consented-to judgement of foreclosure, on the Property in which Plaintiffs had given up all interest, despite the previous action filed and settlement, and letters delivered to cease such collection attempts, demonstrate that Defendants Ocwen and SPS engages in a pattern and practice of violating the FDCPA as alleged above.

70. As a result of Defendants Ocwen and SPS's actions and conduct, Plaintiffs suffered actual damages, including, but not limited to, harassment, coercion, increased emotional distress, anxiety, and other emotional and mental distress as detailed above.

71. Plaintiffs are entitled to recover actual damages, including emotional distress damages, statutory damages, costs and attorneys' fees from Defendants, and such other and further relief as this Court deems just and proper.

### COUNT THREE
(All Defendants)

**Illegal, Fraudulent or Unconscionable Conduct in Attempted Collection of Debts In Violation of the Maine Consumer Credit Code 9-A M.R.S. §9-403(G)**
**(As against all Defendants)**

72. Plaintiffs repeat and reallege and incorporate by reference all paragraphs above.

73. By attempting to collect on the mortgage loan from the Foggs, Bank of New York Mellon as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-1, through Ocwen and SPS claimed a right and attempted to enforce a right that it had relinquished pursuant to an agreed order entered by the Maine District Court in the matter of *The Bank of New York Mellon F/K/A the Bank of New York as Trustee*

*for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-01 v. Stanley Fogg and Helen Fogg*, (State of Me. D. Ct., Bangor No. RE-2011-15) on August 6, 2013. The Court ordered the foreclosure judgment to be satisfied by the sale of the property and found that no execution shall issue on any deficiency. Consequently the right to collect any balances owed on the mortgage loan has been barred by a final order of the court.

74. Further, the redemption period had been waived transferring all interest in the property to Bank of New York Mellon as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-1 upon entry of the Judgment.

75. Bank of New York Mellon as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-1, through Ocwen and then SPS thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §9-403(G).

76. Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant to 9-A M.R.S. §9-408.

77. The Plaintiffs are entitled to relief jointly and severally from the Defendants.

78. The Plaintiffs demand judgment for actual, including emotional distress, damages, statutory damages, punitive damages, their attorneys' fees and costs, for pre-judgment and post- judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

## DEMAND FOR JURY TRIAL

79. Please take notice that Plaintiffs demand a trial by jury in this action.

Dated at Portland, Maine, this 29th day of April, 2016.

/s/*Andrea Bopp Stark*
Andrea Bopp Stark, Esq.

>Counsel for the Plaintiffs
>Molleur Law Office
>419 Alfred Street
>Biddeford, Maine 04005
>Andrea@molleurlaw.com
>(207)283-3777